**John E. Groves, Plaintiff in Error, v. W. W. Kimball Co., Defendant in Error.**

### Gen. No. 14,392.

EQUITY—*when without jurisdiction.* A bill in equity does not confer jurisdiction which sets up a contest open to the public made in connection with an advertising scheme and the award made pursuant thereto and which seeks to set aside such award upon

grounds of fraud, accident and mistake and prays a mere money judgment—the remedy is at law.

Bill in equity. Error to the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding. Heard in this court at the March term, 1908. Affirmed. Opinion filed April 12, 1909.

**Statement by the Court.** This is a writ of error sued out to review an order of the Circuit Court, sustaining a general demurrer to "an amended bill of complaint as amended", brought by the plaintiff in error against the defendant corporation, and dismissing the bill for want of equity. The assignments of error merely raise the question of the sufficiency of the "amended bill as amended" to state a cause of action in equity.

The bill was thrice amended and thrice demurred to generally. Each of the demurrers was sustained. After the first two, the complainant took leave to amend, but after the third, he elected to stand by his "amended bill as amended".

The bill will therefore be stated as finally amended. Its allegations are substantially these:

The defendant corporation about August 1, 1905, caused to be published in certain Chicago daily papers "a contract of agreement to the world", a copy of which is annexed to the bill as Exhibit A. This exhibit is an advertisement headed "$20,000 Grand Prize Distribution". It is stated therein that $20,000 is to be distributed in prizes to those who send the largest lists of correct words made from letters used in spelling the two words, "Kimball Pianos"; $700 in a Kimball Grand Piano as first prize to the person making the largest list of words; $500 in a Kimball Upright Piano as a second prize; $250 in a Kimball Piano Player as third prize; and for further prizes credit bills to be applied on the purchase of Kimball Co. products in varying amounts, until $20,000 has been distributed. Various conditions are annexed to the offer in the advertisement—these among them:

"Only such words are to be used as are found in

Webster's International Dictionary. No proper names, foreign words, names of persons, towns or places are to be used. Do not use a letter more times than it appears in the two words Kimball Pianos''.

The complainant being in doubt whether certain correct English words (which are inflected forms of other words, but which cannot be found in Webster's International Dictionary) would be allowed under the conditions of said published agreement, called in person at the office of the defendant, W. W. Kimball Co., about August 1, 1905, and asked to see the manager of said word contest in reference thereto, and was conducted by one of the employes of the company to one Miss Heegan, who had personal charge of said word contest. In reply to his inquiries Miss Heegan informed the complainant that any proper inflection of any English word, not otherwise excluded, would be permissible under the published conditions of Exhibit A.

The complainant, after said interview with Miss Heegan, accepted the terms and conditions of ''said contract of agreement so explained and agreed to'', and ''entered into the faithful performance of said contract on his part to be performed''.

On August 31, 1905, before five o'clock P. M., the complainant delivered to the said defendant a list containing 1,259 words, or thereabouts, which said list was accepted and filed by said W. W. Kimball Co., ''the complainant having then and there performed all the terms and conditions of said contract on his part to be performed''.

The names of the winners of the prizes offered in said contract of agreement were to be determined by three prominent judges, whom the W. W. Kimball Co. were to appoint, and ''some time after August 31, 1905, E. G. Cooley, S. W. Fallows and W. P. Nixon were appointed to determine the parties entitled to the prizes''.

On September 15, 1905, the said W. W. Kimball Co.

caused to be published in the Chicago papers what purported to be the award of said judges, which is annexed to the bill as "Exhibit B".

Exhibit B is an advertisement signed by W. W. Kimball Co., which, among other things, says:

"A special force of experts was engaged for two weeks in canvassing the returns.    The judges now render their decision as follows:

In the Kimball Prize Word Contest we find the following named persons entitled to the three principal awards for having correctly furnished the largest lists of words made from letters used in spelling the two words, 'Kimball Pianos':

First Prize, $700 Kimball Grand Piano to Mr. Fred Osmy, 1380 Wilton Ave.

Second Prize, $500 Kimball Upright Piano to Louise Hopkins, 1006-55th Place.

Third Prize, $250 Kimball Piano Player to Mr. John E. Groves, 1482 Polk St.

We find furthermore that all the awards as made by W. W. Kimball Co. are entirely correct according to the terms and conditions of the Word Contest offer.
Signed

> SAMUEL FALLOWS (Rector St. Paul's Church),
> E. G. COOLEY, (Superintendent of City Public Schools),
> WILLIAM PENN NIXON, (Collector of The Port)."

John E. Groves, mentioned in said Exhibit B as the winner of the third prize, is the complainant. Believing that said award was fairly, justly and equitably made, in compliance with the printed terms and conditions of said contract as set forth in Exhibit A, the complainant accepted said third prize and receipted for the same on October 1, 1905.

On January 1, 1906, the complainant was permitted to compare his list of words with that of winner of first prize under alleged award, and discovered that said award was not made according to the terms and conditions of Exhibit A.

The defendant did not have the judges determine who was entitled to the award as set forth in said Exhibit A, but "fraudulently and deceitfully and secretly", without the knowledge of the complainant, proceeded itself, by its servants and employes, to determine to whom it should make the award, contrary to and notwithstanding its public advertisement, Exhibit A, that said award would be made by said judges. The said servants of the defendant who determined said award were not educated, competent, skilled and learned sufficient to enable them to properly and justly determine who was entitled to first prize.

The process of determining the prize winners was begun by the said W. W. Kimball Co. long before the said judges were appointed, and entirely independently of said judges.

Before Exhibit A was published, W. W. Kimball Co., by its employes, had prepared a "key" list of words to be used in marking lists of contestants, with which the judges had nothing to do, and the contents of which were entirely unknown to said judges. Every contestant's list, including the complainant's, was marked according to said "key". Said "key" did not contain all the correct English words possible under the conditions set forth in Exhibit A "and explained and described to your orator by Miss Heegan, agent of the aforementioned defendant Company." It contained words which are incorrect, according to Exhibit A, as explained and described. Said employes of the defendant omitted to count correct English words in the complainant's list, gave credit to the person awarded first prize for words incorrectly spelled and also for words forbidden by Exhibit A, so explained and described, and gave said person credit for words for which the complainant received no credit, although the complainant's list contained the same words. The aforementioned judges concurred in all these errors and mistakes, by reason

whereof the complainant was deprived of the first prize and received third prize instead. The aforesaid method of determining the winners of said prizes simply amounted to a guess at what said "key" list contained, and was not a reward for skill and diligence in ascertaining all the correct words possible. After the names of the alleged prize winners had been so determined by the employes of W. W. Kimball Co., the said W. W. Kimball Co. prepared a draft of the award as set forth in Exhibit B, and sent the same by Miss Heegan to said Fallows, Cooley and Nixon, who "signed the said draft without any examination, investigation or consultation on said list of words, for the purpose of informing themselves whether the alleged award about to be signed by them was correct, true or just, according to the conditions of the contest." No one of the judges examined the submitted lists, and Nixon did not even see them.

The award of the said judges is erroneous and void, because it was not concurrent and made in the presence of each other, but was signed separately at different times and places; that the complainant expected, and had a right to expect, that his said list of words, "by the express condition of said Exhibit A, would receive the joint consideration, wisdom and examination of the three aforesaid judges sitting and acting together", and that on that expectation he entered into the contest. The alleged award "was in reality not the award of the judges, but of W. W. Kimball Co., for which the pretended award in Exhibit B was a mere sham and subterfuge".

The aforesaid award "should be set aside for the fraud or gross errors and palpable mistakes of the employes of W. W. Kimball Co., which fraud or errors and mistakes were acquiesced in and adopted by said judges". In the list of words submitted by the complainant there were at least 755 correct English words, while the list of the alleged winner of the first prize contained only 570 correct English words.

The complainant at all times since the discovery of his rights has been willing and ready to deliver back to the defendant a piano player of the kind and value awarded to him upon the presentation to him by the defendant of a piano of the kind and value of the first prize, and has so notified the defendant.

Complainant has no adequate relief except in a court of equity.

The prayer of the bill is that the W. W. Kimball Co. shall be required to answer these allegations; that a decree be entered against the W. W. Kimball Co. in favor of the complainant for $450, to be satisfied by the said defendant company delivering to the complainant a piano of the regular cash value of four hundred and fifty dollars, and in case of the failure or refusal of said defendant so to do, that an execution may issue against the aforesaid company for the aforesaid amount, and that the complainant may have such other relief as the nature of the case may require, etc.

D. E. McCracken and J. H. Perkinson, for plaintiff in error.

Alden, Latham & Young, for defendant in error.

Mr. Justice Brown delivered the opinion of the court.

The demurrer to the bill, a full statement of which is prefixed hereto, was manifestly properly sustained. Nothing we can say can make clearer than the words of the bill themselves do, the fact that it states no case for the interference of a court of equity.

According to the theory which it repeatedly states of the "offer to the whole world" and "the acceptance by the complainant" and the "contract" thus made, it sets forth, in the most favorable view that can be taken of it, a breach of a simple contract. The contract is not of the kind where a specific performance is a remedy given by the law. If there be a broken

contract shown in the facts alleged, and the allegations can be proven, it is one in which the damages are capable of computation in money directly and simply.

Indeed, the prayer of the bill is in essence nothing more than a prayer for a money judgment of $450, for a breach of contract. There is but one defendant, and all the allegations tend only to the charge that that defendant made a contract with the plaintiff and broke it. To set this up and then further to say that the defendant broke the contract "fraudulently" or by "gross error" or "palpable mistake", does not bring the case within the equitable jurisdiction arising from "fraud or mistake". The complainant argues the matter as though it involved the setting aside of an award, or of an arbitration. There is no "award" or "arbitration", in the legal sense, in this case.

The cases cited are therefore not in point. The complainant and defendant in this case had agreed on no "arbitrators" of differences that might arise. The defendant had merely said, as a part of its alleged "contract", that the people whom it should "appoint" to decide for *it,* the proper distribution of its property, would be "prominent". The distinction is plain between "engineer's estimates", made in a railroad construction contract, "final and conclusive" on amounts due the contractors (as in Wood v. C., S. Fe etc. R. R. Co., 39 Fed. Rep. 52, cited by plaintiff in error) and such a "decision".

There are other objections to the bill pointed out by the defendant in error, which we think are well taken, but it is not necessary to discuss them. The bill is plainly without equity, for the reason that it comes under no proper head of equity jurisdiction. If there be any grievance or cause of action shown in it, it is one in which the remedy at law is complete.

The decree of the Circuit Court is affirmed.

*Affirmed.*